**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

MIA JACKSON,

                Plaintiff,

- v -

BONOBOS, INC., WALMART INC., and KYLE JAY, individually,

                Defendants.

Civil Action No.: 22-cv-7351

**COMPLAINT**

*Jury Trial Demanded*

Plaintiff Mia Jackson ("Jackson"), by and through her undersigned attorney, brings this Complaint against Defendants Bonobos, Inc. and Walmart Inc. (collectively "Bonobos") and Defendant Kyle Jay ("Jay"), and alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq., the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq., and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 et seq. as well as breach of contract and violation of New York Labor Law ("NYLL") § 193.

**JURISDICTION, VENUE, AND PROCEDURAL REQUIREMENTS**

2. The Court has original jurisdiction over Jackson's federal claims pursuant to 28 U.S.C. §§ 1331, 1343.

3. The Court has supplemental jurisdiction over Jackson's state and city law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy.

4. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred there.

5. All conditions precedent to filing the instant action have been fulfilled. On or about March 23, 2022, Jackson submitted a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). On or about October 6, 2022, the EEOC issued Jackson a Notice of Right to Sue, and this action is being brought within 90 days of Jackson's receipt of the Notice of Right to Sue.

6. Within 10 days of the commencement of this action, Jackson will provide notice of this action to the New York City Commission on Human Rights and Corporation counsel, pursuant to the New York City Administrative Code § 8-502(c).

## PARTIES

7. Plaintiff Jackson is a resident of the State of New York and former Manager of Bonobos.

8. At all relevant times, Jackson was an "employee" of Defendants under all relevant statutes.

9. Bonobos, Inc. was at all relevant times and is a Delaware corporation registered in New York and permitted to do business in New York.

10. Bonobos, Inc. was at all relevant times and is a fully owned subsidiary of Walmart Inc., a Delaware corporation registered in New York and permitted to do business in New York.

11. Bonobos employed more than 14 employees during 2021.

12. Bonobos conducted business at 173 Court Street, Brooklyn, NY 11201, where it employed Jackson.

13. Defendant Jay was at all relevant times employed by Bonobos as its Area Manager and Jackson's supervisor.

14. Jay had the ability to affect the terms and conditions of Jackson's employment and did so by, among other things, assigning her work, overseeing her work, evaluating her performance and providing feedback, and terminating her employment.

15. Upon information and belief, Jay resides in New York.

16. At all relevant times, Defendants were Jackson's "employer" under all relevant statutes.

## FACTUAL BACKGROUND

### I. Jackson is Hired by Bonobos and Excels in Her Role

17. At the time she was hired by Bonobos, Jackson had over 15 years of professional experience in retail sales.

18. Jackson obtained certificates for at least seven programs she completed through Bonobos' LinkedIn Learning.

19. In or about December 2020, Jackson began working as a manager at Bonobos' Cobble Hill location at 173 Court Street, Brooklyn, NY 11201.

20. During her employment, Jackson was the only Black manager Bonobos employed in its five New York City stores.

21. Jackson excelled in her role at Bonobos.

22. Jackson received positive performance reviews at Bonobos.

23. Jackson exceeded her sales metric expectations at Bonobos.

24. Bonobos' Regional Director Peyton Sharp informed Jackson that she led her store to a top-five ranking amongst all Bonobos stores nationwide in sales metrics.

25. Jay was supposed to review Jackson's performance and provide feedback but refused.

26. Instead, Jay often encouraged Jackson to resign from her position, asking if she would quit.

27. Jay frequently targeted Jackson with racially motivated insults, calling her "lazy," "aggressive," and a "crackhead."

28. Jay did not subject Caucasian employees to those or similar insults.

29. When considering a Black candidate for a position at Bonobos' Cobble Hill store location, Jay told Jackson that, although he agreed that the candidate was qualified, he would not hire her because he suspected that she would not have a good work ethic or come to work on time.

30. Jay did not suspect that similarly situated Caucasian candidates would present those issues.

31. In order to appease a Caucasian customer who was complaining at the Cobble Hill store location, Jay shared a copy of another non-Caucasian employee's vaccination card without her knowledge or consent.

## II.     Jackson Complains of Jay's Discriminatory Treatment

32. Jackson complained about Jay treating her worse because of her race to Bonobos, including to Bonobos' Regional Director Peyton Sharp in July 2021.

33. Peyton Sharp instructed Jackson not to share her complaint with human resources and, in exchange, she offered to rescind Jay's written attempts to discipline Jackson.

34. In fear of her job, Jackson agreed not to report the issues to human resources.

35. Jay continued to target Jackson, including by rejecting her store's supply orders and budget for team spending, and by outsourcing the store's employees to other stores, causing the Cobble Hill store location to be understaffed.

36. In September 2021, Jackson complained again that Jay was treating her worse because of her race, to Lakesia Wimberly, Bonobos' People Relations & Talent Program Manager, by email and during a videoconference.

37. Lakesia Wimberly agreed with Jackson that Jay's behavior demonstrated a racial bias and promised to investigate it.

### III. Bonobos Terminates the Employment of All Non-Caucasian Employees at Jackson's Store, Replacing Them with Caucasian Employees

38. Instead of investigating as promised, Bonobos revealed the contents of Jackson's complaints to Jay and terminated Jackson's employment on November 1, 2021, citing an unspecified policy violation.

39. The same day Bonobos terminated Jackson's employment, it terminated the employment of the other two non-Caucasian employees at the Cobble Hill store location and replaced all three employees with Caucasian employees.

40. Those Caucasian employees received full-time positions and promotions soon after the employment of all non-Caucasian employees at the Cobble Hill store was terminated.

41. Bonobos further retaliated against Jackson by withholding her wages, including paid-time-off payouts she was owed in connection with her 2020 promotion, bonuses from UPT/Conversion contests, stock options, 401(K), and referral bonuses from referring two new Bonobos employees.

42. Walmart Inc. communicated with Jackson regarding her complaints and forwarded her exit interview paperwork upon the termination of her employment.

**FIRST CAUSE OF ACTION**
**(Race Discrimination in Violation of Title VII)**
*Against Defendants Bonobos and Walmart*

43. Jackson repeats and re-alleges each allegation of the preceding paragraphs as if

fully set forth herein.

44. Defendant Bonobos has discriminated against Jackson on the basis of her African-American race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e et seq. Jackson has suffered disparate treatment as a result of Bonobos' wrongful conduct.

45. Bonobos subjected Jackson to an adverse employment action because of her race, including, but not limited to, terminating her employment after she complained of discriminatory treatment.

46. As a direct and proximate result of Bonobos' unlawful employment practices, Jackson has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, emotional distress, which has manifested in physical symptoms, and harm to her employability and earning capacity.

47. Defendant Bonobos' conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of Jackson, entitling her to punitive damages.

**SECOND CAUSE OF ACTION**
**(Retaliation in Violation of Title VII)**
*Against Defendants Bonobos and Walmart*

48. Jackson repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

49. As set forth in detail above, Defendant Bonobos subjected Jackson to discrimination and adverse employment actions because of her race in violation of Jackson's statutory and constitutional rights.

50. Bonobos was aware that Jackson opposed its discriminatory employment

practices and/or asserted her rights under Title VII.

51. Bonobos, unlawfully and without cause, retaliated against Jackson as a direct result of Jackson asserting her rights under Title VII, and Jackson suffered materially adverse employment actions as a result.

52. As a direct and proximate result of Bonobos' unlawful employment practices, Jackson has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, emotional distress, which has manifested in physical symptoms, and harm to her employability and earning capacity.

53. Bonobos' conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Jackson, entitling her to punitive damages.

54. Accordingly, Bonobos retaliated against Jackson in violation of her statutory rights as guaranteed by Title VII.

## THIRD CAUSE OF ACTION
**(Race Discrimination in Violation of the NYSHRL)**
*Against All Defendants*

55. Jackson repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

56. The aforementioned facts and circumstances demonstrate that Defendants discriminated against Jackson because of her race.

57. As set forth in detail above and herein, Defendants discriminated against Jackson and subjected her to adverse employment actions, including, but not limited to, terminating her employment after she complained of discriminatory treatment.

58. As a direct and proximate result of Defendants' unlawful employment practices, Jackson has suffered and continues to suffer damages, including lost earnings, lost benefits, other

financial loss, emotional distress, which has manifested in physical symptoms, and harm to her employability and earning capacity.

59. Accordingly, Defendants discriminated against Jackson because of her race, in violation of her statutory rights as guaranteed by the NYSHRL.

## FOURTH CAUSE OF ACTION
### (Retaliation in Violation of the NYSHRL)
*Against All Defendants*

60. Jackson repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

61. As set forth in detail above, Defendants subjected Jackson to discrimination and adverse employment actions because of her race in violation of Jackson's statutory and constitutional rights.

62. Defendants were aware that Jackson opposed discriminatory employment practices and/or asserted her rights under Title VII.

63. Defendants, unlawfully and without cause, retaliated against Jackson as a direct result of Jackson asserting her rights under Title VII, and Jackson suffered materially adverse employment actions as a result.

64. As a direct and proximate result of Defendants' unlawful employment practices, Jackson has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, emotional distress, which has manifested in physical symptoms, and harm to her employability and earning capacity.

65. Defendants' conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Jackson, entitling her to punitive damages.

66. Accordingly, Defendants retaliated against Jackson in violation of her statutory

rights as guaranteed by the NYSHRL.

## FIFTH CAUSE OF ACTION
**(Race Discrimination in Violation of the NYCHRL)**
*Against All Defendants*

67. Jackson repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

68. The aforementioned facts and circumstances demonstrate that Defendants discriminated against Jackson because of her race.

69. As set forth in detail above and herein, Defendants discriminated against Jackson in the terms and conditions of her employment by treating Jackson less well than her similarly situated, Caucasian employees.

70. As a direct and proximate result of Defendants' unlawful employment practices, Jackson has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, emotional distress, which has manifested in physical symptoms, and harm to her employability and earning capacity.

71. Accordingly, Defendants discriminated against Jackson because of her race, in violation of her statutory rights as guaranteed by the NYCHRL.

## SIXTH CAUSE OF ACTION
**(Retaliation in Violation of the NYCHRL)**
*Against All Defendants*

72. Jackson repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

73. As set forth in detail above, Defendants subjected Jackson to discrimination and adverse employment actions because of her race in violation of Jackson's statutory and constitutional rights.

74. Defendants were aware that Jackson opposed discriminatory employment practices and/or asserted her rights under Title VII.

75. Defendants, unlawfully and without cause, retaliated against Jackson as a direct result of Jackson asserting her rights under Title VII, and Jackson suffered materially adverse employment actions as a result.

76. As a direct and proximate result of Defendants' unlawful employment practices, Jackson has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, emotional distress, which has manifested in physical symptoms, and harm to her employability and earning capacity.

77. Defendants' conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Jackson, entitling her to punitive damages.

78. Accordingly, Defendants retaliated against Jackson in violation of her statutory rights as guaranteed by the NYCHRL.

## SEVENTH CAUSE OF ACTION
### (Aiding and Abetting in Violation the NYSHRL and NYCHRL)
*Against Defendant Jay*

79. Jackson repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

80. New York Executive Law Section 296(6) makes it "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so."

81. New York City Administrative Code Section 8-107(6) makes it "an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so."

82. Defendant Jay aided, abetted, incited, compelled, or coerced Defendants' unlawful conduct, including race discrimination and retaliation, against Jackson by his conduct, action, and inaction, in violation of the NYSHRL and NYCHRL.

83. Jay was aware of his role as part of the unlawful activity that he assisted in, and knowingly and substantially assisted Defendants in their violations of the NYSHRL and NYCHRL.

84. As a direct and proximate result of Jay's conduct, Jackson has suffered and continues to suffer damages, including lost earnings, lost benefits, other financial loss, emotional distress.

85. Jay's conduct has been intentional, deliberate, willful, malicious, reckless and conducted in callous disregard of the rights of Jackson, entitling her to punitive damages.

### EIGHTH CAUSE OF ACTION
#### (Breach of Contract)
*Against Defendants Bonobos and Walmart*

86. Jackson repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

87. As part of its offer of employment to Jackson, Bonobos agreed to compensate her certain wages, including paid-time-off payouts she was owed in connection with her 2020 promotion, bonuses from UPT/Conversion contests, stock options, 401(K), and referral bonuses from referring two new Bonobos employees.

88. Bonobos breached its contract with Jackson by failing to pay her those owed wages.

89. Bonobos' breach of contract deprived Jackson of wages that she would have otherwise received.

## NINTH CAUSE OF ACTION
### (Unlawful Deductions from Wages in Violation of NYLL § 193)
*Against Defendants Bonobos and Walmart*

90. Jackson repeats and re-alleges each allegation of the preceding paragraphs as if fully set forth herein.

91. Defendant Bonobos acted as Jackson's employer within the meaning of NYLL § 193.

92. Bonobos' refusal to pay Jackson the aforementioned wages owed constitutes unlawful deductions in violation of NYLL § 193.

93. Bonobos' withholding of Claimants' wages was willful and done in bad faith. Accordingly, Jackson is entitled to liquidated damages equal to 100% of the unpaid wages due and owing to them pursuant to NYLL § 198(1-a).

94. Jackson is also entitled to recover all reasonable attorney's fees incurred in connection with their claims, along with prejudgment interest pursuant to NYLL § 198(1-a).

95. As a direct and proximate result of Bonobos' breaches of the NYLL, Jackson has been damaged in an amount to be determined at trial.

## RELIEF

Plaintiff Mia Jackson demands judgment in her favor and against Defendants Bonobos, Inc., Walmart Inc., and Kyle Jay as follows:

A. A declaratory judgment that the actions of Defendants complained of herein violate Title VII, New York State Human Rights Law, and New York City Human Rights Law;

B. An injunction and order permanently restraining Defendants from engaging in any

      such further unlawful conduct;

C.     An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Jackson for all monetary and/or economic damages, including but not limited to past and future lost earnings;

D.     An award of damages against Defendants, in an amount to be determined at trial, plus prejudgment interest, to compensate Jackson for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her emotional distress;

E.     An award of punitive damages, in an amount to be determined at trial;

F.     Prejudgment interest on all amounts due;

G.     An award of Jackson's reasonable attorneys' fees and costs to the fullest extent permitted by law; and

H.     Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Mia Jackson demands a trial by jury on all issues so triable of right.

Dated: December 5, 2022                                           Respectfully submitted,

                                                                                 /s/ Alex Rissmiller
                                                                                 Alex Rissmiller
                                                                                 Rissmiller PLLC
                                                                                 5 Pennsylvania Plaza, 19th Floor
                                                                                 New York, NY 10001
                                                                                 T: (646) 664-1412
                                                                                 arissmiller@rissmiller.com

                                                                                 *Counsel for Plaintiff Mia Jackson*